The court should reverse the judgment below because Petitioner's habeas claim is based on a disagreement with a state court relevance ruling, and this court does not engage in second-guessing of such rulings. Instead, to obtain relief when a claim is based on an allegedly erroneous evidentiary ruling, a petitioner must show not only that the ruling was erroneous but that it was so egregiously prejudicial that it made the trial fundamentally unfair and created a likelihood that an innocent person was convicted. A petitioner has not alleged even that he made this showing and he certainly has not done so. Here, in the underlying state court case, an Illinois jury found Petitioner guilty of soliciting a hitman to murder his some conversations that Petitioner had with the woman, Trina Bennett, who set Petitioner up with the hitman, who was, in fact, an undercover officer. Now, the state courts found that the evidence was irrelevant. They explained that the conversations did not make any consequential fact, including whether Petitioner intended to hire the hitman, more or less likely. Now, Petitioner disputes this finding. Now, Keith v. Schaub is a case of this court that is instructive on how to review such a claim. In Keith, the petitioner there argued that the state court violated his right to present a defense by excluding relevant testimony, what he considered relevant testimony. In that case, it was expert testimony regarding the mental state on the day of the homicide. This court rejected the argument and it said that the argument that the state court relevance ruling was wrong did not present a federal question, that it was not going to second guess the state court relevance ruling, which is a state law determination. And that was the end of that argument. And that should be the end of this argument because Petitioner, that's the way Petitioner has framed the claim and the court is not going to second guess that state court ruling. Now, that doesn't mean that you could never have a due process claim based on an evidentiary ruling. Again, Petitioner would have to show that the evidence, that the evidentiary ruling was erroneous and so egregiously prejudicial that it created a likelihood that an innocent person was convicted. Again, Petitioner has not even alleged that he made such showing and he certainly has not done so. In fact, the state court evidentiary ruling, far from being erroneous, was reasonable. Now, Petitioner wanted to testify to certain conversations he had had in the past with Ms. Bennett to show that he feared her. But the trial court found and the state appellate court affirmed that this difference in the case. Here, Petitioner did not even assert that he had gone to the meeting with the hitman only because of his fear of Ms. Bennett. Instead, he testified that even though he had told Ms. Bennett that he was going to go to the meeting, he in fact had no plans to do so and only changed his mind at the last minute when his fiancé and her sons had to go to the fiancé's grandfather's house because he was ill. Essentially, this opened up a time that happened to coincide with the meeting and he decided to go get it over with and maybe collect some evidence to go to the police. And so the fear of Ms. Bennett wasn't even the motivating factor for him to go to the meeting. And moreover, the state court noted that Petitioner had not raised a compulsion defense. Petitioner had not said, well, I acted as I did only because I felt compelled to do so out of fear and to protect myself or my family. So with these two things in mind, the state court was reasonable in determining that these conversations were relevant. Moreover, the defendant has shown no showing that the proceedings were fundamentally unfair or that in fact he was innocent. To the contrary, the evidence against him was extremely strong. He was caught on video and even he and the district court characterized it this way as ostensibly hiring a hitman. And they described it as tantamount to a confession. He was found, he was recorded appearing to hire the hitman to kill his ex-wife. Now, against this, Petitioner argues essentially that the motive evidence that the state put forward was weak. His claim is that he had no motive to kill his ex-wife because they were friendly, they were on good terms. But this argument ignores the plain record. On the video, the defendant is showing, complaining that he had paid his ex-wife $14,000 in the last couple of months, that he could not continue to do so. He had also sent her threatening texts about the child support proceedings that the ex-wife had recently initiated. And so clearly the state had very strong motive. And the same evidence counters Petitioner's other argument, which is that he had no financial ability, that the state didn't show that he could pay the $7,500 that was promised to the hitman. Again, on the video, Petitioner is shown saying he had just paid $14,000 to his ex-wife. And so clearly there was strong motive and strong intent evidence. Now against this, Petitioner had only a post hoc, uncorroborated, and frankly far-fetched story. To believe Petitioner, you would have to believe that even though he feared Ms. Bennett, he had told her he was going to go to the meeting with the hitman, he in fact was not going to go. Further, you would have to believe that when he changed his mind at the last minute and decided to go, at that point he had not decided to play along and pretend he was hiring the hitman, but he was just going to say no and then collect some evidence and go to the police. But then he became so afraid during the meeting that he decided to play along and pretend. But even though this was the case, even though he was so afraid of the hitman, he gave the hitman his real name and phone number. He gave the hitman his fiance's telephone number. He gave the hitman the ability to find his ex-wife's house. He gave her an accurate physical layout of the house. He gave her a strategy of how to attack the ex-wife and her boyfriend in their garage. And he did this even though he was going to double-cross the hitman who he purportedly feared. Not only that, but you'd have to believe that he didn't go to the police beforehand. He didn't warn his ex-wife beforehand, and he didn't go to the police afterward. And so all Petitioner is left with in this case is a relevance ruling which he disagrees with and an uncorroborated post hoc frankly unbelievable story. Neither of these things merit habeas relief. Well, your problem is you think the district court went beyond what she should have done. That's right, Your Honor. The district court seemed to believe that the trial court should have done something beyond simply rely on its relevance ruling to find that any right to present a defense claim had to fail. But of course there is no right to present irrelevant evidence. And so the state court once it found that the pursue to resolve the right to present a defense claim. And this Petitioner now has to challenge that relevance ruling, has to make the showing I described, and has not done so. Well, I get the impression, or at least you think, that the district judge didn't really have the authority to do what she did. Well, that's right. So there is no authority for the district court to second-guess the evidentiary ruling. In the state court? In the state court evidentiary ruling, exactly. All right. Well, I think that's the distinction. You know, what happened in the state? There may have been a different decision if somebody else, maybe the district judge, wasn't making that decision. But as far as the state, the decision of the state court is protected, frankly, because of the basis they say, well, this is irrelevant. That's a determination that's made at the state court level. And I guess you're saying that the federal court shouldn't overrule that. That's exactly right, Your Honor. And these sorts of decisions by trial courts regarding relevance, even if they were to come on direct appeal, are from the decision of state court. It's even a much higher bar. And there's frankly no ability to simply disagree with the ruling. And Petitioner has not gone on to show some sort of general due process violation. Mr. Maloney, what you say is framed against the backdrop of an evidentiary ruling as opposed to a constitutional issue. Well, the evidentiary ruling was an antecedent state law issue necessary to decide the constitutional claim. The Petitioner and district court, nobody disputes that you can't present. There's no federal constitutional right to present irrelevant testimony. And so even to get, so once a state court determines the evidence is irrelevant, then there's nothing further for the state court to do. And to overturn that. What if it's a relevance ruling that's clearly erroneous? I'd say an eyewitness that's precluded by a state trial court saying it's not relevant. So if there was some sort of egregiously erroneous holding that also led to a conclusion that this court were then to conclude that made the trial fundamentally unfair and that a reasonable, showed a likelihood that an innocent person was convicted, that would be a separate due process violation. So we have the right, if a right to present a defense claim is based on a irrelevant, allegedly erroneous, irrelevant ruling, this court in Keith said you can't just disagree with that. That there's really no federal question because it's a state law question. But we have the separate avenue to find a due process violation in the case of some sort of extreme incident where a case completely went off the rails and we believe that there was a fundamentally unfair process there. And that's a separate showing. A petitioner has not even tried to make that showing and for the reasons I described he couldn't make that showing. Well, we have here a confidential informant, right? Yes, Ms. Bennett. Which is a unique individual who is claimed to be part and parcel of the defense that's alleged to be needed. Uh, I'm not sure I quite understand your honors. Well, I mean, I don't know whether this confidential informant would be available to trial or not. Yeah, petitioner, I believe, could have called her and indicated that he didn't plan to do so. But she was available. In this case, the confidential informant wasn't someone who was unknown. The identity was unknown. So that wasn't an issue in this case. I see I've eaten into my rebuttal time. Well, we've asked her for a number of questions. We'll allow a couple of minutes for rebuttal. Thank you, Your Honor. Mr. Curran. Good morning. May it please the court. My name is Nicholas Curran. I'm an attorney with Kathleen Zellner and Associates and I represent the appellee, Sean Fieldman. The trial court in this case eviscerated Mr. Fieldman's defense where it prevented him from testifying to his interactions had on his state of mind and his conduct. Because the trial court precluded him from testifying to these issues, Mr. Fieldman was unable to explain to the jury why he met with an undercover police officer posing as a hitman if it was not his intent to have his ex-wife or her boyfriend killed. Was this woman available? Yes, Your Honor. She was available to testify. She was not called by the defendant? No, Your Honor. But he was not required to call her. No, I'm not suggesting. I'm just trying to get the backdrop here. Yes, Your Honor. Your Honor is correct that it was put on the record that Trina Bennett was available to testify. She was not called by either the prosecution or the defense in this case. One of the issues that, or one of the things that the state has said this morning that I take issue with in particular is the notion that this is a request for habeas relief based solely on a state court evidentiary ruling concerning relevance. This is an argument that the state has made repeatedly in this litigation. It was an argument that was rejected by the district court and it is an argument that should be rejected by this court. Is that because the state courts didn't address it other than in an evidentiary setting and didn't address it in a constitutional setting? Well, the trial court did not address the constitutional implications. No, I'm talking about the appellate court. Certainly, the appellate court made passing reference to the fact that the defendant had argued in his direct appeal that the exclusion of the evidence denied his constitutional right to present a defense, but it did not analyze the claim. Now, I would agree that because the court made passing reference to the constitutional claim that was set forth by Mr. Fieldman, that means that under Harrington, it's entitled to ad pedeference, but even under ad pedeference, the state court's adjudication of Mr. Fieldman's claim involves a decision that is contrary or involves an unreasonable application of clearly established federal law. In the key case to focus on and the one that Mr. Fieldman's claim is based on is Crane v. Kentucky. In Crane v. Kentucky, the Supreme Court held that there are constitutional limitations to the extent to which a state court can exclude evidence on the basis of relevance. So in Crane, you had a situation, just to provide a little bit of context, where the Kentucky had a system in the voluntariness of a confession. Evidence related to the voluntariness of the confession was not to be submitted to the jury. So in Crane, what you had is the defendant wanted to present evidence related to the circumstances of his confession. The trial court ruled that that evidence could not be introduced to the jury because that evidence only pertained to the and held that the confession was given voluntarily. The Supreme Court said that the state court made a mistake in determining that that evidence, the circumstances of the confession, was relevant only to the legal issue of the voluntariness of that confession, because it was also, it should have been admitted to, or excuse me, allowed to be presented to the And that is precisely the situation we have here. We are not breaking any new ground when we contend that a fundamental part of due process is the opportunity to be heard. As the Supreme Court put it in Washington v. Texas, the right to present a defense includes the right to present the defendant's version of the facts as well as the prosecution's to the jury so that the jury may decide where the truth lies. In this case, Mr. Fieldman was completely deprived of the opportunity to present his version of the facts to the jury. The trial court completely barred Mr. Fieldman from testifying to any of his interactions with Trina Bennett during the five to six weeks leading up to his meeting with the undercover officer. The court precluded Mr. Fieldman from testifying that he was afraid of Trina Bennett because she had told him that she had broken into a home and shot someone. The trial court prevented Mr. Fieldman from testifying to the fact that Trina Bennett was the one who initiated a conversation about having his ex-wife killed and she told him that she knew people who could get the job done. The trial court prevented Mr. Fieldman from testifying that Trina Bennett continuously called him to solicit and engage in conversation regarding having his ex-wife killed. The trial court prevented him from continually press him for money. In fact, there was one occasion where Trina Bennett contacted him and told him that she had people who had come into town who were there to do the job. Mr. Fieldman was not allowed to testify to any of that. And this completely prevented him from explaining to the jury why, if he did not actually intend to have his ex-wife killed, he agreed to meet with the undercover officer posing as a hitman. The defense attorney, in this case, as soon as she started to get into these conversations with Trina Bennett, the state objected and the trial court sustained the objection. And it was kind of a moving target as to why exactly the trial court was sustaining the objections. At times it was relevance, at times it was foundation, at times it was, well, you haven't raised a compulsion defense. I encourage this court strongly to read the trial court's response to Mr. Fieldman's efforts to present this evidence because it becomes quite evident that the trial judge just simply misapprehended fundamental rules regarding the laws of evidence. But beyond that, she never considered the significance of the evidence that Mr. Fieldman was trying to present to his ability to present a defense. And as the district court held, without being able to introduce this evidence, Mr. Fieldman's defense was nothing more than a bare-bones denial that he had the intent to have his ex-wife murdered. Was this in the initial stages of this, that he was, I don't know what went on, because this is some years after this, where we're getting this case, isn't it? Yes, Your Honor. And so, originally, what happened? Get the original prosecution, or was there a guilty plea, or what happened? So, Your Honor, there was the meeting that is sort of the focal point of the trial and the charges took place July 23, 2010. There was a trial, I believe, within a year or two after that. Mr. Fieldman pled not guilty. He had a jury trial. Then he was convicted, filed a direct appeal. The direct appeal was denied. I believe he filed a petition for, if it wasn't post-conviction relief, it might have been some other form of collateral relief, which was denied. And then this habeas petition was timely filed. Later on. I don't remember the actual times, but I mean, this went all the way through the state court, up to the point where the petition to the Supreme Court was denied. That is correct, Your Honor. So, it's gone full scope in the state court, and that's, so how long after was it do they bring this habeas? Was it right away? Or did it sit around a while? I believe he filed a 1401 petition, a form of collateral relief under Illinois law, and he filed that, I believe, within approximately six months of after his conviction. Well, is that something that goes in federal court? I don't know where... No, it was litigated in state court, and none of the issues that we've raised in this federal proceeding relate to that petition. Right. So, that's what I'm saying. So, there's a space in time that this has been brought up. That's correct, Your Honor. I don't remember how long. Some years, I believe. Yes, Your Honor. However, I will say that the petition, and I believe the state would concede this point, was timely filed. There's no issue as to the timeliness. I don't know. I'm just curious myself. Yes, Your Honor. Because this is an angle that... This seems to be kind of a long stretch. Yes, Your Honor. Someone comes in and says that, of course... And maybe the undercover cop jumped the gun, you know, see if he is going to do something the next day or something like that. But that's beside the point. There's two completely separate issues here. We're at the second lap now, and that's all I want to emphasize. Yes, Your Honor. I will say that, and just to clarify, I want to make sure that factually nothing is misconstrued. Mr. Fieldman was arrested on the date of the meeting. It was a couple of hours after the meeting. Part of the reason that there's been such a delay before we stand here today is it did take the district court, I think, a couple of years to issue a decision on the petition after it had been... So what kind of time was there? Was this in the district court for a couple of years, you say? Yes, Your Honor. I believe so. And the state can correct me if I'm wrong on that, but I believe it was a couple of years. Now, was this defendant indigent at the time of his conviction? No. He had, I believe, a privately retained attorney. Yeah. But subsequent to the conviction, he went through the state system pro se? He did, Your Honor. And he raised... Is that because he couldn't retain counsel? Your Honor, I don't know the answer to that. That's why I was wondering if he was indigent. I'm just surprised that on direct appeal he didn't have counsel. Your Honor, and I apologize, I don't know the answer to that. He did file his briefs pro se, and to his credit, he raised this constitutional issue, which the district court granted relief on, although it was denied at the state court level. Well, we are faced, though, with a situation where the state trial judge was aware of the availability of Ms. Bennett, was made aware of it? Yes, Your Honor. But if anything, the availability of Ms. Bennett to testify actually supports Mr. Fieldman's claim that he was unconstitutionally prevented from testifying to these conversations he had with her, which impacted his state of mind and ultimately his decision to meet with this undercover officer. Because as the Supreme Court has held and many other courts have held, the greatest engine we have for discovery of the truth is cross-examination. So in this case, these conversations that Mr. Fieldman wanted to testify to, they weren't being offered for the truth of the matter asserted. They were all being offered to show the effect those conversations had on his state of mind and on his conduct. And the state could have called Trina Bennett, not only could it have subjected Mr. Fieldman to cross-examination concerning these statements that he alleged that she made to him, it also could have called Trina Bennett to have her deny these conversations took place if she could truthfully do that. But it's not at all outside the realm of possibility. Ms. Bennett had an extensive criminal history. Nobody disputed that she was the one who initiated contact between Mr. Fieldman and the undercover officer. It's not a stretch at all to think that she made representations to Mr. Fieldman about being able to get this done that made him concerned for his own safety. You know, as far as, there are a couple of other things I want to get to very quickly. So one of the reasons that the court found that this evidence was not relevant, or believed it was not relevant, was because it dealt with issues weeks before the actual meeting with the undercover police officer. But what's interesting about that is the state endeavored to admit, and the trial allowed it to introduce, evidence related to a May 6th petition that was filed by Mr. Fieldman's ex-wife to modify his child support obligations. And the theory was that, well, something that happened in May of that year could reasonably motivate his actions and provide him with the motive to have hired this individual to kill his ex-wife. But when it came to Mr. Fieldman's evidence, the trial court applied a completely different standard. All of Mr. Fieldman's conversations with Trina Bennett took place well after May 6th. And in fact, they took place during the weeks immediately preceding his meeting with this undercover officer. And it's completely contrary to human experience to suggest that events that occurred in the days, months, weeks leading up to this meeting didn't have an impact on Mr. Fieldman's decision to meet with this undercover officer. The other thing that I want to point out, which I think is critically important, is this idea that because Mr. Fieldman did not file a compulsion defense, he somehow disclaimed any fear of Trina Bennett. And that is, as the district court held, completely untrue. Mr. Fieldman's defense was not that he committed the offense, but that he had an affirmative defense to avoid culpability. It was always that he didn't commit the offense because he lacked the requisite intent. So that's something I wanted to make clear as well. Well, I don't want to drag it into the soap opera and everything, but as I understand it, it was this, I think her name's Talia Fonse, who was a friend of Trina and came up with this, came up with Trina Bennett. Now, I don't want to get into all those little details, but it seems that that's what was rotating within his own life, I guess. He had a girlfriend and she wasn't happy either with what was going on with getting him to pay for support and all that. Yes, Your Honor. It is accurate that I believe Talia, his girlfriend or fiance, introduced him to Trina Bennett. That is correct. Thank you. Thank you, Judge. Thank you, Mr. Kern. Mr. Malamud. Thank you, Your Honors. I'll try just to make a couple quick points after first just addressing a sort of housekeeping issue. So Ms. Bennett was available to testify, and in fact, she did testify at the fiance Talia Fonse's trial. So she would have been available, and the record indicates that she was actually in the courtroom or in the courthouse on the days of trial. So she would have been available to testify. Now, turning first to the issue of Crane, the petitioner characterizes that case as similar to this one and as a case in which the state court made a relevance ruling that then the Supreme Court, the federal court overturned, but that's not the case. Instead, Crane was a case about who got to decide what to believe with respect to evidence that had to do with a confession in that case. So in that case, and it was a part of a series of cases which had to do with the procedure for filing a suppression motion of a confession. And so in that case, Kentucky had a procedure by which the trial court heard the evidence with respect to voluntariness, made a determination, and then if the trial court determined that it was voluntary, none of that testimony then went in front of the jury. So it wasn't a question of whether it'd be relevant or not. It was a question of who got to decide, and the Supreme Court said that the jury got to decide that issue. And then finally, quickly, just turning to the assertion that the trial courts precluded and eviscerated petitioner's ability to tell his version of the story. In fact, petitioner did get to tell his story. He even testified, and this is on page 18 of the separate appendix, that he feared Bennett. He, on page 19 of the separate appendix, testified that she had told him that she had tied up an old man and blew his brains out. So petitioner was able to testify to that. He was able to testify that she had been badgering him, that he didn't want to go, that you know, he only decided to go at the last minute. And so he was able to tell his story. The trial judge simply, the jury simply didn't believe him. And unless this court has any other questions, we would ask. Apparently not. Thank you, Mr. Malview. Thank you, Mr. Corwin. The case is taken under advisement.